## TESORO PETROLEUM CORPORATION,
Plaintiff,

v.

## ASAMERA (SOUTH SUMATRA) LTD., Defendant.

Civ. A. No. SA–91–CA–0937.

United States District Court,
W.D. Texas,
San Antonio Division.

June 17, 1992.

Circuit has not yet issued a position on adminis- trative requirements for pre-receivership suits.

Gerald Thomas Drought, Martin, Drought & Torres, San Antonio, Tex., Lawrence A. Waks, Varet, Marcus & Fink, Austin, Tex., for Tesoro Petroleum Corp.

Paul Andrew Drummond, John G. Lewis, Groce, Locke & Hebdon, San Antonio, Tex., C. MacNeil Mitchell, Breed, Abbott & Morgan, New York City, for Asamera (South Sumatra) Ltd.

PRADO, District Judge.

## ORDER

On this date the Court considered the Motion to Determine Jurisdiction and Venue, filed by Tesoro Petroleum Corporation on November 1, 1991.

1. The stipulation was approved by the Court on October 27, 1991.

## Introduction

This suit stems from an arbitration proceeding that took place in the Southern District of New York. The arbitration award was entered on September 6, 1991, also in the Southern District of New York. On September 9, 1991, Tesoro Petroleum Corporation (Tesoro) filed its Complaint to Vacate an Arbitration Award in this Court, seeking to have the arbitration award (award) set aside. On September 18, 1991, Asamera (South Sumatra) Ltd. (Asamera) filed suit in the Southern District of New York, seeking to confirm the award.

In order to conserve their own and the Court's resources and to avoid inconsistent procedural rulings, the parties entered into a stipulation[1] pursuant to which they agreed that this Court would initially determine whether jurisdiction and venue are proper in the Western District of Texas as opposed to the Southern District of New York.

## Background

The dispute at the heart of this action concerns certain overriding royalty interests that Asamera claims Tesoro owes to it pursuant to a contract between Tesoro and Redco (Indonesia) Limited[2], referred to as the "1971 Farmout Agreement" (Agreement). The Agreement provided in part:

12. *Arbitration.* Any dispute between Redco ... and Tesoro arising out of this Agreement shall be settled by arbitration in New York, New York, according to the Commercial Arbitration Rules of the American Arbitration Association, then in effect.

It is not disputed that Asamera properly invoked the arbitration clause in April of 1990, when it commenced an arbitration to compel Tesoro to pay the disputed overriding royalty interest. The arbitration award was made on September 6, 1991, awarding Asamera a 2% overriding royalty interest for the 20 year life of a 1989 Technical Assistance ·Contract.

2. Redco (Indonesia) Limited is Asamera's predecessor in interest. For ease of reference the Court will henceforth refer to both Redco and Asamera as "Asamera".

Tesoro is seeking to vacate the arbitration award in this case. The only issue before the Court at this juncture is whether the Western District of Texas or the Southern District of New York is the proper forum for doing so.

Tesoro contends that the issue is primarily one of venue, and argues that venue is proper in Texas in this case pursuant to two statutes, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), 9 U.S.C. § 201 *et seq.* Tesoro argues that this court has subject matter jurisdiction over this case both pursuant to diversity jurisdiction and federal question jurisdiction, and that since this is the first filed case it takes precedence over the later filed action by Asamera. Tesoro also argues that this Court has personal jurisdiction over Asamera under the Texas Long Arm Statute and the Minimum Contacts Test.

Asamera argues that section 10 of the FAA vests exclusive jurisdiction to vacate an arbitration award in the United States District Court for the district in which the award was made; in this case, the Southern District of New York. Asamera also contends that the Convention does not provide a legal basis for an action to vacate an arbitration award, and that insufficient contacts exist between Asamera and this forum to establish personal jurisdiction over Asamera. These issues, involving construction of the FAA and the Convention, have not been squarely decided by the Fifth Circuit.

### 1. *Federal Arbitration Act.*

■ With respect to vacating arbitration awards, the FAA provides as follows:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a).

Similarly, section 9 of the FAA, dealing with actions to confirm and enforce arbitration awards provides:

If no court is specified in the agreement of the parties [to arbitrate], then such application [to enter a judgment on the arbitration award] may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9. These two sections are often referred to interchangeably as containing similar jurisdiction and venue provisions. *See Enserch Int'l Exploration, Inc., v. Attock Oil Co.*, 656 F.Supp. 1162, 1164, n. 5 (N.D.Tex.1987).

Two circuits have ruled on the effect of sections 9 and 10 of the FAA. The Ninth Circuit, interpreting these sections as jurisdictional limitations, has held that jurisdiction to confirm or vacate an arbitration award lies exclusively with the district court for the district wherein the award was made. *See Central Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 744 (9th Cir. 1985); *United States ex rel. Chicago Bridge & Iron Co. v. ETS–Hokin Corp.*, 397 F.2d 935, 939 (9th Cir.1968). *See also Enserch Int'l Exploration, Inc., v. Attock Oil Co.*, 656 F.Supp. 1162 (N.D.Tex.1987).

The Second Circuit, on the other hand, has interpreted these sections as venue pro-

visions and has held that they are permissive and not mandatory with respect to where a suit to confirm or vacate an award can be brought. *Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.*, 804 F.2d 16, 18–19 (2d Cir.1986); *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698 (2d Cir.1985), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 *reh. denied*, 475 U.S. 1151, 106 S.Ct. 1808, 90 L.Ed.2d 352 (1986).

The Fifth Circuit has not directly addressed this issue. In *City of Naples v. Prepakt Concrete Co.*, 490 F.2d 182 (5th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974), the court held that under 9 U.S.C. § 9, the proper place for a suit to confirm an arbitration award was in the district where the award had been made. *Id.*, at 184. However, this decision appears to have been influenced not only by "section 9's command," but also by principles of comity, judicial restraint, and waiver. *Id.* Therefore, this Court does not interpret *Prepakt* as deciding the issue in this case.

In another, more recent Fifth Circuit case the court stated:

> [W]e are not reluctant to hold that [section 9] does not establish an exclusive forum for suits upon arbitral awards. Rather, the section says only that a party *may* apply to the federal court in the district where the award was entered to seek its enforcement. This language does not prevent the court in the Southern District of Texas, which stayed the appellants' action pending California arbitration, from reopening that action after arbitration is concluded. As one court aptly pointed out, to conclude otherwise would seriously conflict with § 3 of the Arbitration Act which authorizes stays of litigation, because a "stay" order entered in a forum other than that where arbitration would occur could only lead to ultimate dismissal. (Citation omitted.)

*Purdy v. Monex Int'l. Ltd*, 867 F.2d 1521, 1523 (5th Cir.), *cert. denied*, 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 136 (1989).

While this language appears to support an interpretation that the forum provisions of the FAA are permissive, the fact is that this part of the opinion is dicta. In *Purdy* the suit was originally filed in state district court and was subsequently removed to federal court where a motion to compel arbitration was filed.[3] No arbitration had taken place and no award had been made. Thus, the court in *Purdy* seems to be following the rule set forth in several cases that if a court is originally seized with jurisdiction of a case and issues an order compelling arbitration, that court's jurisdiction continues with respect to subsequent motions to confirm or vacate the award. *See Smiga*, 766 F.2d at 706; *NII Metals Services, Inc. v. ICM Steel Corp.*, 514 F.Supp. 164 (N.D.Ill.1981). Therefore, this Court also finds that *Purdy* does not provide controlling precedent on the issue of whether this suit to vacate an arbitration award made in the Southern District of New York can be properly maintained in this district.

The Court finds that the most thorough analysis of this issue is set forth in *Enserch Int'l Exploration, Inc., v. Attock Oil Co.*, 656 F.Supp. 1162 (N.D.Tex.1987). While *Enserch* is not controlling authority, this Court agrees with both the analysis and the conclusion of the court in that case.

 As the court in *Enserch* observed, in construing a statute, the most persuasive evidence of congressional intent is the wording of the statute. *Sierra Club v. Train*, 557 F.2d 485, 489 (5th Cir.1977). The language at issue in this case is as follows:

> In any of the following cases the United States court in and for the district wherein the award was made *may* make an order vacating the award ... (Emphasis added.)

9 U.S.C. § 10(a). A straight-forward reading of this provision reveals that the per-

---

**3.** The arbitration agreement at issue in *Purdy* specified California as the place where the arbitration was to take place.

missive "may" does *not* refer, as Tesoro argues, to *which* court is authorized to vacate an arbitration award, but to the permissive nature of the relief that the district court is empowered to grant. Likewise, the statutory language concerning *which* district court may vacate an arbitration award is clear and unambiguous and refers only to "the United States court in and for the district wherein the award was made ..." Therefore, the Court finds that 9 U.S.C. § 10(a) mandates that the only proper federal court in which an action to vacate an arbitration award may be filed is the court in and for the district wherein the award was made.[4]

### 2. *The Convention.*

■ Tesoro's next argument is that this suit is properly before this Court pursuant to the Convention, which provides in pertinent part:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203. In addition, the Convention provides:

> An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place

of arbitration if such place is within the United States.

9 U.S.C. § 204.

The question, however, is whether an action to *vacate* an arbitral award is "an action or proceeding falling under the Convention."[5]

Asamera argues that the Convention was not designed or intended to provide a mechanism for vacating an arbitral award, but was enacted for the purpose of encouraging the recognition and enforcement of commercial arbitration agreements in international contracts. Tesoro argues that because the Convention expressly provides for defenses to actions brought to enforce arbitral awards, it also allows a party to bring suit to set aside or vacate such an award.

> In this regard, the Convention provides: Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207. The Convention also provides:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof of [specific enumerated defenses]....

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Article V, subd. 1.

---

**4.** It is not necessary to decide whether section 10 limits the jurisdiction of the district courts or whether it is a mandatory venue provision, since the result in either case is for the cause to be dismissed. *See* Fed.R.Civ.P. 12(b)(1) and 28 U.S.C. § 1406(a).

**5.** The parties disagree about whether the award in this case is "domestic" or "non-domestic." Asamera argues that the Convention only applies to "non-domestic" awards as defined in the

case of *Bergesen v. Joseph Muller Corp.,* 710 F.2d 928 (2d Cir.1983), and that the award is "non-domestic" under the *Bergesen* test. Tesoro argues that the award is expressly covered by the Convention pursuant to the statutory language in 9 U.S.C. § 202, and under an expansive interpretation of *Bergesen.* Because the Court decides the applicability of the Convention on other grounds, it will not address this issue.

This language does not appear to this Court to authorize a suit to be initiated for the purpose of vacating an arbitral award, but instead sets forth the specific, limited circumstances in which, in a suit to enforce an award, a court may decline to do so. Because the Court does not find that a suit to vacate an arbitral award is expressly allowed under the Convention, it must now determine whether such a suit has been authorized by common law.

In support of its argument that the Convention provides a basis for a suit to vacate an arbitration award, Tesoro cites the case of *Northrop Corporation v. Triad Financial Establishment*, 593 F.Supp. 928 (C.D.Ca.1984), *rev'd on other grounds*, 811 F.2d 1265 (9th Cir.), *cert. denied*, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 219 (1987). However, while a motion to vacate was filed in the *Northrop* case, it is not clear whether this motion initiated the action, or whether the motion was filed under the Convention or the FAA.[6] Therefore, *Northrop* does not provide authority for Tesoro's contention.

This Court, like Asamera, has been unable to locate any case in which a party initiated an action under the Convention to vacate or set aside an arbitral award. The closest case that this Court was able to locate is *Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc.*, 1991 WL 123962 (S.D.N.Y.1991). In that case, an arbitration award was entered on June 26, 1990. Approximately five months later, the Jamaica Commodity Trading Company filed an application to confirm the award under the FAA. In response, Connell Rice & Sugar Company filed a motion to vacate under the Convention. The issue before the court was whether the motion to vacate was untimely, since under the FAA such a motion must be filed within three months after the award is filed or delivered. *See* 9 U.S.C. § 12. The court in *Jamaica* held that the motion to vacate was not untimely because it was filed pursuant to the Convention and the Convention does not expressly limit the time in which a party may move to vacate or re-

mand an arbitration award. The court observed that:

> [U]nder the Convention a party has three years to move to confirm the award ... [therefore] ... a party may raise one of the grounds [set forth in the Convention] for vacating an award at any time during the three-year period *in opposition* to a motion to confirm." (Emphasis added).

*Id.*, at 3. Thus, the court held that a motion to vacate under the Convention was proper, when filed in response to a motion to confirm. *Id.*

The holding in this case, although closer to the argument Tesoro makes than *Northrop*, also does not go far enough to serve as authority for the proposition that the Convention authorizes a suits to vacate an arbitral awards. Absent stronger authority, and in light of the Convention's overriding purpose to encourage the recognition and enforcement of arbitration agreements in international commerce, this Court simply cannot hold that the Convention authorizes a suit to vacate, like the one at issue in this case.

### *Conclusion*

Because this Court has found that this suit may not properly be entertained by this Court under either the FAA or the Convention, the suit shall be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 28 U.S.C. § 1406(a).

Accordingly, it is hereby ORDERED that this case is DISMISSED pursuant to Fed.R.Civ.P. 12(b)(1) and 28 U.S.C. § 1406(a).

---

**6.** Both statutes were discussed and applied in that case. *Northrop*, 593 F.Supp. at 934–36.